UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 3:24-cr-62-MMH-SJH

ISVALDO GUERRA PERDOMO

_____

**O R D E R**

**THIS CAUSE** is before the Court on Defendant's Motion to Suppress Statements (Doc. 135; Motion), filed on March 31, 2025. Defendant Isvaldo Guerra Perdomo filed a supplement to the Motion on April 8, 2025, and then an amendment to the supplement on April 15, 2025. See Defendant's Supplement to Motion to Suppress Statements (Doc. 137; Supplement); Amendment to Defendant's Supplement to Motion to Suppress Statements (Doc. 140; Amendment). The government filed a response in opposition to the Motion on April 14, 2025. See United States' Response in Opposition to Defendant's Motion to Suppress Statements (Doc. 139; Response). And on April 22, 2025, the government filed a response to the Supplement and Amendment. See United States' Response in Opposition to Defendant's Amendment to Motion to Suppress Statements (Doc. 143; Supplemental Response).

The undersigned referred the Motion to the Honorable Samuel J. Horovitz, United States Magistrate Judge, for preparation of a report and

recommendation, and Judge Horovitz held an evidentiary hearing on May 14, 2025. See generally Clerk's Minutes (Doc. 144); Transcript of Evidentiary Hearing (Doc. 145; Tr.), filed June 15, 2025. Following the evidentiary hearing, Perdomo submitted additional briefing to which the government responded. See Defendant's Post-Evidentiary Hearing Memorandum in Support of His Motion to Suppress Statements (Doc. 146), filed June 29, 2025; United States of America Post-Evidentiary Hearing Memorandum in Opposition to Defendan'ts [sic] Motion to Suppress Statements (Doc. 147), filed July 18, 2025. On July 30, 2025, the Magistrate Judge filed a Report and Recommendation (Doc. 151; Report) recommending that the Motion be granted. The government timely filed objections on August 13, 2025. See United States' Objection to Report and Recommendation on Defendant's Motion to Suppress Statements (Doc. 152; Objections). Despite adequate time to do so, Perdomo has not filed a response to the government's Objections. Accordingly, this matter is ripe for review.

### I. Standard of Review

The Court reviews a magistrate judge's report and recommendation in accordance with the requirements of Rule 59, Federal Rules of Criminal Procedure (Rule(s)) and 28 U.S.C. § 636(b)(1). The Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see also Rule 59(b)(3). Pursuant to

Rule 59 and § 636(b)(1), where a party timely objects to the magistrate judge's report and recommendation, "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Rule 59(b)(3); Thomas v. Arn, 474 U.S. 140, 149–50 (1985). Nevertheless, while de novo review of a magistrate judge's recommendation is required only where an objection is made, the Court always retains the authority to review such a recommendation in the exercise of its discretion. See Rule 59 advisory committee notes (2005) (citing Thomas, 474 U.S. at 154; Mathews v. Weber, 423 U.S. 261, 270–71 (1976)).

In deciding whether to reject or accept the magistrate judge's recommendations, a district judge retains the power "to hear additional testimony or the same testimony all over again if [she decides] that [it] would be beneficial in determining the motion." United States v. Marshall, 609 F.2d 152, 154 (5th Cir. 1980) (alteration added) (quoting United States v. Whitmire, 595 F.2d 1303, 1305 (5th Cir. 1979))[1]; United States v. Raddatz, 447 U.S. 667, 680 (1980) ("[A district judge's] broad discretion includes hearing the witnesses live to resolve conflicting credibility claims."); see also Amlong & Amlong, P.A.

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

v. Denny's, Inc., 500 F.3d 1230, 1251 (11th Cir. 2007) ("[T]he district court may, if it so chooses, conduct its own hearing as a prelude to making a new determination."). However, if a district court elects to reject a magistrate judge's credibility determinations on critical fact issues, the court must first rehear the disputed testimony. Louis v. Blackburn, 630 F.2d 1105, 1110 (5th Cir. 1980); United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001) (per curiam); see also Amlong & Amlong, P.A., 500 F.3d at 1250 ("[A] district court may not override essential, demeanor-intensive fact finding by a magistrate judge without hearing the evidence itself or citing an exceptional justification for discarding the magistrate judge's findings."). Indeed, only in the "rare case" where "'there . . . [is] found in the transcript an articulable basis for rejecting the magistrate's original resolution of credibility and that basis . . . [is] articulated by the district judge'" may the district court reject the credibility findings without rehearing the witness testimony. Cofield, 272 F.3d at 1306 (quoting Marshall, 609 F.2d at 155); Amlong & Amlong, P.A., 500 F.3d at 1250. In contrast, "a district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings." Cofield, 272 F.3d at 1305 (emphasis added) (citing Raddatz, 447 U.S. at 675–76).

## II. Discussion

The instant Motion addresses statements Perdomo made during a custodial interrogation on April 5, 2024. The Magistrate Judge recommends

that the Court suppress the statements Perdomo made during that interrogation for two reasons. First, the Magistrate Judge finds that Perdomo unambiguously invoked his right to counsel during the interrogation such that the government violated Perdomo's Miranda[2] rights when it continued to question him. See Report at 13-15. Second, the Magistrate Judge finds that the government made improper assurances of leniency in exchange for Perdomo's cooperation such that under the totality of the circumstances, Perdomo's statements were involuntary. Id. at 16-19. The government raises factual and legal objections to both recommendations. Because the Court finds that the Objections are due to be overruled and the Report adopted as the Court's opinion, the Court will not repeat the factual and procedural history, or the arguments and authority addressed in the Report. Instead, the Court writes briefly to address the government's specific objections.

### A. Miranda

In the Report, the Magistrate Judge finds that Perdomo unambiguously invoked his right to counsel when he made a statement in Spanish that translates to English as either "I can talk. But I want to talk to a lawyer," according to the government's professional translator, or "If I can talk? Well, I want to talk to an attorney," according to Perdomo's professional translator.

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

- 5 -

See Report at 6, 13-15. The Magistrate Judge reasons that it is unnecessary to resolve which translation is the most accurate because regardless, a reasonable, native Spanish speaker would have understood the statement as an unambiguous request for counsel. Id. at 14-15. The government contends that in making this finding the Magistrate Judge erred in crediting the testimony of Perdomo's witness Eduardo Arenas, a certified Spanish interpreter and translator, over that of Dulcilio Rodriguez, the Spanish-speaking officer who served as an interpreter during the interrogation.[3] These witnesses differ in their understanding of Perdomo's statement about counsel. Arenas testified that to a native Spanish speaker, Perdomo's statement is a clear and unambiguous request for counsel. See Tr. at 75. Rodriguez testified that he understood Perdomo's statement to be more equivocal. Id. at 37-38.

The Court has carefully reviewed the transcript of the evidentiary hearing, the evidence presented at the hearing, and the arguments of counsel. Upon due consideration, the Court is satisfied that the Magistrate Judge's decision to give more weight to the testimony of Arenas on this point is fully supported by the record. Although the government endeavors to undermine the credibility of Arenas' interpretation and bolster that of Rodriguez, its

---

[3] Notably, the government's professional translator testified at the evidentiary hearing but did not provide any testimony concerning how a native Spanish speaker would have understood the statement. See Report at 6 n.8.

arguments in this regard are unpersuasive for the reasons stated in the Report. See Objection at 3; see Report at 6 n.8, 13-15. The undersigned finds that an additional evidentiary hearing on this point would not be beneficial and accepts the Magistrate Judge's recommendation to credit Arenas' testimony. As such, the Court adopts the recommended finding that an objective, native Spanish speaker would have understood Perdomo's statement as a clear and unambiguous request for counsel.

The government's attempt to inject ambiguity into Perdomo's unequivocal request by pointing to preceding statements and events is unavailing. See Objection at 6. The undersigned agrees with the Magistrate Judge's assessment that neither Perdomo's statement itself, nor the preceding dialogue, create any ambiguity. See Report at 13-14. And to the extent the government asserts that Perdomo's request for counsel is "contradictory and ambiguous" because he had previously asked to speak to an agent, the Court is unpersuaded. See Objection at 6 (citing Henderson v. Singletary, 968 F.2d 1070, 1073 (11th Cir. 1992)); see also Tr. at 47. At the evidentiary hearing, the agent who interrogated Perdomo testified that, upon his arrest, Perdomo was given the choice to either talk to an agent about the investigation or be taken "straight to this courthouse to be processed by the U.S. Marshals . . . ." See Tr. at 47. Given those options, the fact that Perdomo asked to speak to the agent rather than be taken directly to the courthouse says very little about whether

Perdomo had decided to cooperate with the agent, or what Perdomo would choose to do once advised of the charges against him and his right to counsel.[4]

Having fully considered the government's objections, and carefully reviewed Perdomo's statement about counsel, the testimony about that statement, and the context preceding it, the Court accepts the Magistrate Judge's finding that Perdomo made an unambiguous request for counsel. As such, the Court will also adopt the Magistrate Judge's recommendation that the government violated Perdomo's Miranda rights when it continued questioning him following his request for counsel.[5] Accordingly, the Court will grant the

---

[4] The Henderson case on which the government relies presents significantly different circumstances. In Henderson, the defendant was fully aware of his rights and had previously cooperated with law enforcement. See Henderson v. Dugger, 925 F.2d 1309, 1311 (11th Cir. 1991) (discussing prior events in the same case where the defendant was advised of his rights, had invoked his right to counsel, and then subsequently decided to waive those rights). When a different officer sought to question the defendant, the defendant initially declined to speak to the officer. See Henderson, 968 F.2d at 1072. However, in doing so, the defendant identified a particular occasion in the future when he might be willing to talk to the officer. See Henderson, 968 F.2d at 1072-73. On the specified occasion, the defendant still expressed an unwillingness to talk, and the officer asked an additional question. Id. at 1073. The Henderson court reasoned that the officer's question was an appropriate clarifying question, relying in part on the defendant's prior statement that he might be willing to talk on that specific occasion. Id. But even so, the court observed that the question "pushed the limit of acceptability." Id.

[5] The government purports to raise a legal objection to the Magistrate Judge's Miranda recommendation but acknowledges that this objection is based on its differing view of the facts. See Objection at 5. Because the Court finds that Perdomo made an unambiguous and unequivocal request for counsel, the government's reliance on Medina v. Singletary to argue that Rodriguez's "single clarifying question" is legally permissible is unavailing. Id. (citing Medina v. Singletary, 59 F.3d 1095, 1105 (11th Cir. 1995)). Indeed, while the Medina court found a detective's clarifying question to be permissible in that case, it did so only after it first determined that the defendant had not "unambiguously and unequivocally invoke[d] his right to remain silent . . . ." See Medina, 59 F.3d at 1105. And significantly, the defendant's statement in Medina was found to be ambiguous based on events preceding the statement in question. Specifically, the court pointed to the defendant's "willingness to talk during the

Motion as to the Miranda violation and exclude Perdomo's statements following his request for counsel, except for the purpose of impeachment. See Report at 20.

### B. Involuntariness

The Magistrate Judge also recommends that Perdomo's statements be excluded as involuntary because they resulted from improper promises of leniency. See Report at 19-20. In the Report, the Magistrate Judge finds that Perdomo "believed that he had been promised and guaranteed a lower sentence in exchange for his answers during the Interrogation, and he cooperated for that reason." See Report at 11. The Magistrate Judge notes that Perdomo's testimony on this point was credible based on his observation of Perdomo during the evidentiary hearing and because the testimony is consistent with the objective record. Id. at 11 n.9. The government objects to this credibility finding. See Objection at 4. In support, the government points to evidence that Perdomo was not confused during the interrogation and would ask questions if he did not understand something. Id. The Court accepts the government's contention insofar as it goes, but the fact that Perdomo was not

---

preliminary interview and willingness to have the tape recorder turned on" which created a reasonable expectation that the interview would continue. Id. at 1104-05. As explained above, Perdomo's request to be taken to the agent rather than the courthouse did not create a reasonable expectation that he would ultimately decide to cooperate. And indeed, Perdomo asked to speak to counsel soon after he was advised of his rights and before answering any questions about the events under investigation.

confused is beside the point. Perdomo's belief that he was promised leniency did not arise from any purported confusion. Rather, as explained by the Magistrate Judge, Perdomo believed he was promised leniency based on his entirely reasonable understanding of what Rodriguez told him. Indeed, the Magistrate Judge finds not only that Perdomo "believed he had been promised a guaranteed leniency in exchange for talking," but also that Perdomo's belief was "certainly understandable" given Rodriguez's statements during the interrogation. See id. at 19; see also id. at 17-18. These recommended findings are fully supported by the record.[6]

The government also objects to the Magistrate Judge's legal conclusion that Perdomo's statements were involuntary. See Objections at 7-10. However, the government's legal objections are premised on its differing view of the facts, specifically, its view that Rodriguez did not make any promises. Id. at 8 (asserting that Rodrigeuz did not make any promises). The government asserts that Rodriguez was "attempting to answer Perdomo's questions, while explaining how the federal system generally works with

---

[6] The government also attempts to undermine Perdomo's credibility by pointing to his testimony that Rodriguez used the word "guarantee" during the interrogation when the record shows that Rodriguez never used that specific word. See Objections at 4 (citing Tr. at 95). Upon review of Perdomo's testimony and the transcript of the interrogation, the Court is not persuaded that Perdomo's inaccurate recollection of the specific words that were used during the interrogation undermines his credibility. This discrepancy appears to be no more than a simple mistake given that, as detailed by the Magistrate Judge, Rodriguez's statements during the interrogation can objectively be understood as offering a guarantee of leniency in exchange for cooperation.

acceptance of responsibility and substantial assistance." Id. at 9; see also id. at 8 ("He was advising Perdomo of [the agent's] statements and also trying to answer questions asked by Perdomo."). In the Report, the Magistrate Judge rejects the government's "gloss" on Rodriguez's "repeated assurances and misstatements of law" as incompatible with the record. See Report at 19. The undersigned agrees. Even assuming arguendo that Rodriguez was merely attempting to answer Perdomo's questions and explain the federal system, the fact remains that his over-simplified translations misstated the law and were improperly definitive in their description of the benefits of cooperating.[7] Upon de novo review of the evidence and based on the totality of the circumstances, the Court finds that the Magistrate Judge correctly determined that Perdomo's decision to answer the agent's questions was based on Rodriguez's misstatements of law and assurances of leniency. And having reviewed the relevant legal authority, the Court is satisfied that these circumstances render Perdomo's statements involuntary.[8] Accordingly, the Court will accept the

---

[7] Later in the interrogation, Rodriguez mistranslated the agent's explanation that the wire fraud charge carries a twenty-year maximum penalty. In his loose translation, Rodriguez omitted the word "maximum," instead informing Perdomo that the wire fraud charge is twenty years. See Gov't Ex. 1 (Doc. 144-3) at ECF pp. 34-35; see also Report at 10-11, 18. Rodriguez's improperly definitive explanation of the penalty exacerbated the coercive power of his improperly definitive assurances of leniency in exchange for Perdomo's cooperation. The government's assertion in its Objections that Rodriguez "only accurately explain[ed] the penalty" is simply not supported by the record. See Objections at 10.

[8] In the Objections, the government emphasizes that the interrogation was not "exhaustingly extensive," and that Rodriguez did not make "any types of threats of physical violence . . . ." See Objections at 8. But notably, the government does not argue that the

Magistrate Judge's recommendation to grant the Motion on this basis as well and will exclude Perdomo's involuntary statements in their entirety.

## III. Conclusion

Upon de novo review of the evidence, the undersigned accepts the Magistrate Judge's findings and determines that an additional evidentiary hearing would not be beneficial in resolving the instant Motion to Suppress. Indeed, the Court finds nothing in the government's Objections that undermines its confidence in the Magistrate Judge's credibility determinations. As such, and upon de novo review of the law, the Court will overrule the government's Objections, adopt the Report as the opinion of this Court, and grant the Motion. Accordingly, it is

**ORDERED:**

1. The United States' Objection to Report and Recommendation on Defendant's Motion to Suppress Statements (Doc. 152) is **OVERRULED.**

2. The Report and Recommendation (Doc. 151) is **ADOPTED** as the opinion of the Court.

---

Magistrate Judge made a legal error in finding that misstatements of law and assurances of leniency can render a defendant's statements involuntary. See Objections at 8; see also Report at 15-16.

3. Defendant's Motion to Suppress Statements (Doc. 135) is **GRANTED**.

4. Perdomo's statements during the following portion of the interrogation are excluded from trial, except for use as impeachment: Segment Start Time 8:27:57 [9] through 8:30:55. [10] See Gov't Ex. 1 (Doc. 144-3) at ECF pp. 17-21. Perdomo's statements following Segment Start Time 8:30:55 until the end of the interrogation are excluded from trial for all purposes. Id. at ECF pp. 21-95.

**DONE AND ORDERED** in Jacksonville, Florida this 12th day of January, 2026.

*[signature]*

MARCIA MORALES HOWARD
United States District Judge

---

[9] This is the point in the interrogation when Perdomo states: "I can talk. But I want to talk to a lawyer."

[10] This is the point in the interrogation when Rodriguez states: "If you accept that you did it, the judge will give you credit when they sentence you with going to jail."

lc11
Copies to:

The Honorable Samuel J. Horovitz
United States Magistrate Judge

Counsel of Record